NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

In re the Marriage of:

FLORENCIO RAMIREZ VASQUEZ, *Petitioner/Appellee*,

*v.*

YNES ALBA ALBERTO DE RAMIREZ, *Respondent/Appellant*.

No. 1 CA-CV 24-0578 FC

FILED 04-22-2025

---

Appeal from the Superior Court in Maricopa County
No.  FC2022-004879
The Honorable Monica Edelstein, Judge

**AFFIRMED**

---

COUNSEL

Stanley David Murray, Attorney at Law, Scottsdale
By Stanley David Murray
*Counsel for Respondent/Appellant*

Law Offices of Linda Aaron-Lory, P.C., Paradise Valley
By Linda Aaron-Lory
*Counsel for Respondent/Appellant*

Underwood Law Office, Phoenix
By Sonya E. Underwood
*Counsel for Petitioner/Appellee*

---

**MEMORANDUM DECISION**

Judge Michael J. Brown delivered the decision of the Court, in which Presiding Judge Anni Hill Foster and Judge Paul J. McMurdie joined.

---

**B R O W N,** Judge:

¶1        Ynes Alba Alberto de Ramirez ("Wife") appeals from the superior court's dissolution decree.  For the reasons below, we affirm.

## BACKGROUND

¶2        Wife and Florencio Ramirez Vasquez ("Husband") married in 1996 and share two adult children.  Husband petitioned for dissolution in August 2022.  The parties owned one home (where they continued to live while the dissolution was pending) and several vehicles, including a diesel truck Husband uses for work as an independent contractor for a commercial trucking company.  During the marriage, Husband formed Rayson Trucking, Inc. ("Rayson"), but the corporation was dissolved in 2021. Wife works in a packaging warehouse. Within several weeks of being served with Husband's petition, Wife obtained a loan for $18,000.

¶3        In its November 2023 minute entry, the superior court scheduled a trial for May 14, 2024, and informed the parties that children under the age of 18 years, including children common to the parties, would not be permitted in the courtroom during court proceedings.  The court set disclosure and discovery deadlines, warning that failing to "timely present the Pretrial Statement with all attachments may result in sanctions," including "the court proceeding by default based on the evidence presented by the appearing party."  Wife timely disclosed the name and qualifications of an expert who would testify about the value of Husband's trucking business, but the disclosure did not include an expert report or the substance of the expected testimony.

¶4        On the day the pretrial statement and exhibits were due (May 7, 2024), Wife filed an accelerated motion to continue the trial "until the end of August."   Explaining that she would undergo surgery, the motion

included a note from a presurgical consult four days earlier that recommended surgery to address "risks for . . . malignancies." But the note did not include a date for the proposed surgery; instead, it said that Wife was "asymptomatic" and "able to carry on all pre-disease performance without restriction." The motion also explained that Wife's attorney would be unable to prepare for trial because of heavy pain medication and the need to travel to California for surgery, but no medical documentation was included. The motion did not request an extension for filing pretrial statements and exhibits.

¶5        The court denied Wife's motion to continue the next day, explaining there was no reason it could not have been filed more than a week before trial. The court sympathized with counsel's health condition but noted that "arrangements for substitution of counsel, etc., could have been made weeks prior." Wife ultimately filed her pretrial statement and exhibits, along with a motion to accept the late filing, the day before trial.

¶6        At trial, the superior court precluded any testimony from Wife's expert witness and the parties' son. The court also declined to admit any of Wife's exhibits except for her most recent affidavit of financial information, which was statutorily required. About a month later, the court issued the dissolution decree, dividing assets and liabilities, ordering the sale of the marital home, declining to award Wife spousal maintenance, and denying both parties' requests for attorneys' fees. Wife timely appealed, and we have jurisdiction under A.R.S. § 12-2101(A)(1).

## DISCUSSION

¶7        Wife contends the superior court erred by (1) denying her motion to continue trial; (2) barring evidence and witnesses; (3) denying her claim for spousal maintenance; (4) awarding community property to Husband without any equalization to Wife and reimbursing Husband for community expenses to be paid from the sale of the residence; and (5) denying Wife's request for an award of attorneys' fees. We address each argument in turn.

### A.        Motion to Continue

¶8        Wife argues her motion to continue the trial should have been granted because she showed good cause based on the "recent discovery of [her] medical condition requiring surgery." We review the denial of a motion to continue for an abuse of discretion, *Dykeman v. Ashton*, 8 Ariz. App. 327, 330 (1968), which occurs when the record is "devoid of competent evidence to support the decision," or when the court commits "an error of

law . . . in the process of reaching [a] discretionary conclusion." *Hurd v. Hurd*, 223 Ariz. 48, 52, ¶ 19 (App. 2009).

¶9            Under Arizona Rule of Family Law Procedure ("ARFLP") 34, titled "Continuances and Scheduling Conflicts," a party seeking a continuance based on the unavailability of a party must show, *inter alia*, when the party learned of their unavailability and their "diligence and efforts in attempting to obtain the party's . . . testimony." Wife did not reference ARFLP 34 in her motion, which asserted Wife would undergo a medical procedure and "be out for four weeks." Presumably she was relying on ARFLP 34(a); however, she failed to provide compelling support. The doctor's notes submitted with the motion did not identify an emergency needing surgical intervention and stated that Wife was "[f]ully active [and] able to carry on all pre-disease performance without restriction." Nor did Wife's motion indicate she tried to avoid the claimed scheduling conflict. In denying the motion, the court explained there was "no reason [the medical concerns] could not have been brought to the [c]ourt and opposing counsel's attention more than a week prior to trial." Although Wife contends the doctor's note contradicting this finding was from "earlier this week," nothing in the doctor's note indicated that Wife's medical condition had been recently diagnosed or that participating in the upcoming trial would be detrimental to her health. And nothing in Wife's motion explained why she could not have filed it sooner than on the day the pretrial statements and exhibits were due.

¶10           Wife's motion also referred to her attorney's health issues. We presume Wife was relying on ARFLP 34(c), which required her to show (1) "the basis for the good cause for a continuance"; (2) when she learned of the reasons for the motion "and why the motion was not or could not have been brought at an earlier date"; (3) her "efforts in attempting to avoid the circumstance(s) which form(s) the good cause for the continuance"; (4) any prejudice to either party that may be caused by granting or denying the motion; and (5) "the continuance is sought in good faith and not for delay or another improper purpose." The motion failed to explain when Wife's counsel's health issues began or why she had not earlier alerted the court. *See* ARFLP 34(c)(2). The court "sympathize[d] with counsel's condition," but explained that "arrangements for substitution of counsel . . . could have been made weeks [earlier]." The court also gave Wife and her counsel the option of attending trial virtually, yet they chose to attend in person. Wife has not shown the court abused its discretion in denying her motion to continue.

### B.     Preclusion of Witnesses and Exhibits

¶11          Wife asserts that the superior court abused its discretion by excluding her witnesses and barring her exhibits.  A trial court "has broad discretion in ruling on disclosure and discovery matters, and this court will not disturb that ruling absent an abuse of discretion."  *Marquez v. Ortega*, 231 Ariz. 437, 441, ¶ 14 (App. 2013).  When a trial date is set and imminent, late disclosure increases the possibility of prejudice to the opposing party.  *Zimmerman v. Shakman*, 204 Ariz. 231, 236, ¶ 16 (App. 2003).  A trial judge "possesses considerable latitude in determining whether good cause has been shown for late disclosure," and "[i]f there is no good cause, barring the introduction of evidence not previously disclosed may be a reasonable sanction."  *Id.*  Under ARFLP 49(j), "each party must disclose the name [and contact information] of any person the party expects to call as an expert witness at trial[,] . . . the substance of the facts and opinions on which the expert will testify, a summary of the grounds for each opinion, [and] the expert's qualifications."  If a party fails to comply with these requirements, "[t]he court may not allow a party to call an expert witness."  *Id.*

¶12          The superior court provided a clear timeline for disclosure and discovery in its trial setting order.  The court warned the parties that no exhibits would be presented at trial "that have not been previously exchanged in discovery."  Because Wife provided only her expert's resume and a list of documents, but failed to exchange the expert's report or identify any specific facts which would support an opinion proffered by the expert, the court barred Wife's witness from testifying about a valuation of Rayson.  The court also precluded Wife from offering any exhibits at trial other than the required financial affidavit due to untimely submission.

¶13          On appeal, Wife fails to address a fundamental problem relating to this issue in that the record does not include any of the exhibits she wished to introduce, nor does it include any indication of what testimony her witnesses would have offered.  "A party may claim error in a ruling to . . . exclude evidence only if the error affects a substantial right of the party and . . . [the] party informs the court of its substance by an offer of proof, unless the substance was apparent from the context."  Ariz. R. Evid. 103(a)(2).  "An offer of proof permits the trial judge to reevaluate [a] decision in light of the actual evidence to be offered, and to permit the reviewing court to determine if the exclusion affected the substantial rights of the party offering it."  *Coleman v. Amon*, 252 Ariz. 107, 114, ¶ 25 (App. 2021) (citation omitted).  As to the expert, although at trial Wife's counsel

asserted that she had in fact disclosed a business evaluation report, she never provided it to the court. Concerning the exhibits, which are not in the record before us, we have no way of deciding whether their exclusion affected Wife's substantial rights. Wife needed to ask the court to have the exhibits marked for appellate purposes only, or, at the very least she needed to submit them as part of a post-trial motion. Without an offer of proof, she cannot show the court abused its discretion.

¶14        Wife also contends the court erred by precluding Wife from calling the parties' adult son to testify. In her untimely pretrial statement, Wife included "[t]he Parties['] Adult Children" on her list of witnesses, noting their testimony would address finances and Wife's health. ARFLP 11 bars the attendance of minor children affected by a proceeding without permission of the court; however, in this case the parties' son turned 18 several months before trial. At trial, Wife tried to call the son as a witness, but the court emphasized its pretrial "instruction . . . that the child common to the parties is not to be involved," and thus the court did not permit him to "be part and parcel to the underlying litigation."

¶15        The parties have not cited, nor has our research revealed, any Arizona authority suggesting that an adult child cannot testify in a dissolution proceeding and cases from other jurisdictions indicate otherwise.[1] Even so, because Wife made no offer of proof concerning the substance of the son's testimony, she may not properly argue the court erred in refusing his testimony. *Coleman*, 252 Ariz. at 114, ¶ 25; *State v. Zaid*, 249 Ariz. 154, 157, ¶ 8 (App. 2020); *see also* ARFLP 86 ("Unless justice requires otherwise, an error in admitting or excluding evidence . . . is not grounds for granting relief under [ARFLP] 83, or for vacating, modifying, or otherwise disturbing a judgment or order.").

¶16        For the first time on appeal, Wife argues she was entitled to a hearing to determine whether the failure to comply with court deadlines was the fault of Wife or Wife's counsel. Commonly known as a culprit

---

[1]        Multiple jurisdictions have held that a court may not bar testimony solely based on a parent-child relationship. *See, e.g.*, *Kordonowy v. Kordonowy*, 887 S.W.2d 809, 811 (Mo. Ct. App. 1994) (noting that preventing an adult child's testimony in a dissolution proceeding was reversible error); *Spencer v. Spencer*, 242 So.2d 786, 790 (Fla. Dist. Ct. App. 1970) (holding that "testimony of adult children in a divorce action must be admitted, if relevant, otherwise admissible, and not merely cumulative"); *Ex parte Harris*, 461 So.2d 1332, 1333 (Ala. 1984) (explaining that while calling a child common to the parties may be distasteful, it is not prohibited).

hearing, such a hearing "allows a trial court to determine whether a party, as opposed to that party's counsel, is responsible for a disclosure or discovery violation, and 'is aimed at protecting a party from dispositive sanctions when the fault lies only with counsel.'" *Marquez*, 231 Ariz. at 444, ¶ 26 (quoting *Lund v. Donahoe*, 227 Ariz. 572, 581, ¶¶ 33–34 (App. 2011). However, "[d]ue process does not require that a hearing be held in every case," even where "sanctions of dismissal or entry of default judgment" are entered. *Robinson v. Higuera*, 157 Ariz. 622, 624 (App. 1988). "The sanction that is appropriate and the process that is due depends on the circumstances and the exercise of trial court discretion." *Montgomery Ward & Co. v. Superior Court*, 176 Ariz. 619, 622 (App. 1993).

¶17            Here, the court's sanctions did not amount to dismissal or default judgment—the court heard Wife's testimony, and Wife's counsel cross-examined Husband and his witnesses. Wife's disclosure and discovery problems did not start with her untimely pretrial statement and exhibit submission. As outlined above, she failed to properly disclose witnesses and exhibits. "The purpose of disclosure is . . . to give adequate notice of what arguments will be made and what evidence will be presented at trial." *Clark Equip. Co v. Arizona Prop. & Cas. Ins. Guar. Fund*, 189 Ariz. 433, 440 (App. 1997). Establishing good cause is necessary to justify "an extension of the disclosure and discovery deadlines." *Marquez*, 231 Ariz. at 444, ¶ 24. Under these circumstances, Wife has not shown the court abused its discretion.

### C.      Spousal Maintenance

¶18            Wife next argues the court erred in declining to award her spousal maintenance. We review a spousal maintenance award for an abuse of discretion, *Leathers v. Leathers*, 216 Ariz. 374, 376, ¶ 9 (App. 2007), and will affirm an award if there is any reasonable evidence to support it, *Gutierrez v. Gutierrez*, 193 Ariz. 343, 346, ¶ 14 (App. 1998). To qualify for spousal maintenance, a spouse must show eligibility under A.R.S. § 25-319(A) and entitlement under A.R.S. § 25-319(B). *See In re Marriage of Cotter and Podhorez*, 245 Ariz. 82, 85, ¶ 7 (App. 2018).

¶19            After reviewing the parties' respective financial affidavits and testimony, the superior court made findings on each factor listed in A.R.S. § 25-319(A) in the dissolution decree. The court noted that Wife's affidavit did "not include accurate income/expense information," and that the court followed "recently codified direction . . . that support should be awarded ONLY for a time and duration necessary to permit the receiving spouse to

achieve self-sufficiency." *See* A.R.S. § 25-319(B).[2] Because "Wife [was] already working" and the court awarded Wife half of the marital residence along with her retirement account, the court found that Wife "has sufficient [assets] . . . with which to support herself." The court further found that it lacked "competent evidence from which to evaluate the significance" of any future medical disability because of Wife's health concerns. Wife's doctor noted that she was "asymptomatic," she had consulted with him to discuss "risks" for future malignancies, and she could continue "pre-disease performance without restriction." Because reasonable evidence shows that "Wife is physically able to work and earn[] sufficient income to meet her needs," the court did not abuse its discretion in denying her an award of spousal maintenance.

### D. Division of Community Assets and Liabilities

**¶20** Wife also challenges the decree's allocation of assets and liabilities, along with related reimbursement and equalization orders or lack thereof. The superior court has broad discretion in allocating community property upon dissolution, and we will affirm the allocation absent an abuse of discretion. *Boncoskey v. Boncoskey*, 216 Ariz. 448, 451, ¶ 13 (App. 2007). We view the evidence in the light most favorable to upholding the decree and will affirm the superior court's ruling if reasonably supported by the evidence. *Id.*

**¶21** The superior court ordered the sale of the marital home. Because Husband continued to pay the mortgage, homeowner association fees, and utility bills while the dissolution was pending, the court awarded

---

[2] In 2022, the legislature amended Arizona's spousal maintenance statute and directed the Supreme Court to establish spousal maintenance guidelines. A.R.S. § 25-319(B). Under the amended statute, courts are instructed to limit a spousal maintenance award to the duration in which the receiving spouse can become self-sufficient. 2022 Ariz. Sess. Laws, ch. 301, § 11 (S.B. 1383). The previous statutory directives on spousal maintenance did not contain language addressing self-sufficiency; instead, they directed courts to award spousal maintenance as deemed "just," after considering the enumerated factors. A.R.S. § 25-319(B) (2018). Here, the superior court failed to recognize that the new guidelines apply to dissolution petitions filed on or after Sep. 24, 2022, the effective date of the amended statute. Ariz. Spousal Maint. Guidelines § I(C)(1); Ariz. Admin. Ord. No. 2022-119. Husband petitioned for dissolution August 5, 2022, so the new guidelines should not apply here. But Wife does not raise this as an issue on appeal.

Husband a *Bobrow* credit of $13,059.95 to be paid from the proceeds of the sale of the home. *See Bobrow v. Bobrow*, 241 Ariz. 592, 596, ¶¶ 15, 19 (App. 2017) (explaining that when a party uses separate funds to pay for community expenses after service of a petition for dissolution, that party is eligible for a reimbursement payment from the benefited party). The remaining proceeds "shall be divided equally" between Husband and Wife. Under *Bobrow*, "to defeat Husband's claim for reimbursement, Wife was obligated to prove by clear and convincing evidence Husband intended the payments for community expenses to be a gift." *Id.* at 596, ¶ 15. The record reflects no such proof.

¶22 Wife argues that *Barron v. Barron*, 246 Ariz. 580 (App. 2018), provides an exception to the *Bobrow* rule of reimbursement. In *Barron*, this court declined to award a reimbursement payment because there was a financial disparity between the spouses, and Wife was not employed and could not contribute to the community expenses without spousal maintenance. *Id.* at 591, ¶¶ 40–44. Here, Wife is employed, and the superior court did not find a "substantial disparity of financial resources." Wife claims that Husband's income was substantially greater than hers, pointing to trial testimony where Husband conceded (through an interpreter) that his monthly income was $13,500. But nothing in the record shows whether he was referencing net or gross income. On appeal, Husband suggests he was confused by the question or its translation and instead points to his financial affidavit and the couples' joint tax returns, showing a monthly income of $5,398 and recent annual incomes of $67,751 and $64,780. Also, when asked at trial about how she calculated Husband's income to be $158,000, Wife responded, "honestly I don't know." We do not reweigh the evidence on appeal. *See Lehn v. Al-Thanayyan*, 246 Ariz. 277, 284, ¶ 20 (App. 2019). Thus, *Bobrow* is controlling, and the court did not err in awarding Husband a credit for his post-petition payments.

¶23 Wife claims the court erred by awarding the business, Rayson Trucking, Inc., to Husband without providing an equalization payment to Wife. But Husband testified that the Arizona Corporation Commission dissolved Rayson in 2021, and the court admitted the certificate to support this assertion. The defunct company's sole asset was the diesel truck, encumbered by two loans for necessary repairs. Because the superior court could reasonably accept Husband's testimony that the diesel truck had no value, Wife has not shown the court erred in denying her request for an equalization payment.

¶24 The community debts included the two loans for repairs to Husband's diesel truck plus unpaid credit card charges. Additionally, Wife

obtained the $18,000 loan, using the marital home as collateral, after service of the petition for dissolution. In response to an interrogatory, Wife admitted that she "got th[e] loan in order to pay some of [her] credit card debts." At trial, she testified that she used the monies to pay credit card obligations, as well as attorneys' fees to her previous counsel. In response, Husband asserted that the charges were Wife's sole responsibility, and that Wife failed to provide documentation of payments.

¶25        The dissolution decree divided responsibility for the loans as follows: (1) Husband was awarded the diesel truck, along with the obligation for the two loans for its repair; (2) Wife was solely responsible for the loan obtained after service of the petition; and (3) the parties would share equal responsibility for their community debts. Wife argues that Husband should reimburse Wife for his share of the community debts she paid with the loan. But beyond her assertion that credit card debt was for community expenses, the record contains no evidence of the payment or the character of the debt itself. The dissolution decree expressly notes that the court "intentionally divided the debts and remaining assets to achieve parity and f[ound] that the total allocation is fair and equitable." Given that reasonable evidence supports the court's division of property and debts, Wife has not shown the court abused its discretion.

### E.        Attorneys' Fees

¶26        Wife argues she was "entitled" to an award of attorneys' fees in the superior court under A.R.S. § 25-324 because Husband has substantial financial resources, and she took reasonable positions in the superior court. We review the grant or denial of attorneys' fees for an abuse of discretion. *Lehn*, 246 Ariz. at 286, ¶ 29. Both parties sought attorneys' fees under § 25-324, but the court found there was no substantial disparity of financial resources and neither party acted unreasonably in the litigation. Wife has not shown the court abused its discretion.

¶27        On appeal, Wife requests an award of her attorneys' fees because "Husband has substantially more resources than Wife" to pay fees. For the reasons discussed above, the record does not support Wife's assertion of substantial financial disparity. Without any legal analysis, Husband requests an award of attorneys' fees as a sanction under ARCAP 25, A.R.S. § 25-324(B), and A.R.S. § 12-349. In our discretion, we decline to award fees to either party, but as the successful party on appeal, Husband is awarded taxable costs subject to compliance with ARCAP 21.

## CONCLUSION

¶28        We affirm.



**MATTHEW J. MARTIN • Clerk of the Court**
**FILED**:            JR